**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**July 23, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2025AP2084**

STATE OF WISCONSIN

Cir. Ct. No.  **2025CV96**

IN COURT OF APPEALS
DISTRICT IV

HUCKLEBERRY ULBRICHT,

   PLAINTIFF-APPELLANT,

V.

ROGER HERRIED AND VILLAGE BOARD OF NECEDAH,

   DEFENDANTS-RESPONDENTS.

APPEAL from an order of the circuit court for Juneau County: STACY A. SMITH, Judge. *Affirmed*.

Before Graham, P.J., Nashold, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1   PER CURIAM.   Huckleberry Ulbricht filed a petition for a writ of mandamus against Roger Herried, clerk for the Village of Necedah, and against

the Village Board of Necedah (the Board), seeking to require Herried to certify and forward to the Board a petition for direct legislation that Ulbricht filed with Herried and to require the Board to act on the petition pursuant to WIS. STAT. § 9.20 (2023-24).[1] Herried and the Board moved to quash Ulbricht's mandamus petition, and the circuit court granted the motion to quash. Ulbricht appeals the order quashing the mandamus petition. We reject Ulbricht's arguments and affirm.

## BACKGROUND

¶2 Ulbricht's mandamus petition alleges the following, which we accept as true for purposes of this appeal. Pursuant to WIS. STAT. § 9.20, Ulbricht obtained signatures and filed a petition with Herried, requesting that the Board either adopt, or submit to the electorate for a vote, a proposed ordinance allowing backyard chickens in the Village of Necedah (the Village). The proposed ordinance was included in the petition. In a letter to Ulbricht, Herried stated that Ulbricht's petition was "rejected because it improperly [sought] to regulate zoning through the direct legislation process." Herried did not certify that Ulbricht's petition was sufficient or forward it to the Board, and the Board did not adopt the proposed ordinance or submit it to the electorate for a vote.

¶3 Ulbricht commenced a mandamus action against Herried and the Board, seeking to require Herried to certify Ulbricht's petition and forward it to the Board, and to require the Board to act on Ulbricht's petition for direct

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

legislation consistent with WIS. STAT. § 9.20, by either adopting the proposed ordinance or submitting it to the electorate for a vote.[2]

¶4      Herried and the Board moved to quash Ulbricht's mandamus petition.  They argued that Ulbricht's proposed ordinance improperly attempted to enact or modify a zoning ordinance, and compelled the repeal of, and directly conflicted with, an existing ordinance.  As a result, they argued that Ulbricht's mandamus petition failed to establish a clear legal right or a positive and plain duty.

¶5      The circuit court agreed with Herried and the Board, and granted the motion to quash.  Ulbricht did not then ask the court to address whether Herried was required to certify Ulbricht's petition or forward it to the Board under WIS. STAT. § 9.20(3), and the court did not address this argument.

¶6      Ulbricht appeals.

## DISCUSSION

¶7      On appeal, Ulbricht argues that the Board was required, under WIS. STAT. § 9.20, to either adopt the proposed ordinance or submit it to the electorate for a vote.  Because we conclude that the proposed ordinance, if enacted, would rezone through initiative and circumvent the substantive and procedural safeguards in WIS. STAT. § 62.23, we conclude that the Board was not required to act on Ulbricht's petition.  Ulbricht additionally argues that Herried was required

---

[2] Initially, Ulbricht's mandamus petition also included an open-meetings claim, but Ulbricht voluntarily dismissed that claim.

to certify Ulbricht's petition and forward it to the Board pursuant to § 9.20(3). We conclude that Ulbricht forfeited this argument. Accordingly, we affirm.

## I. Background Law

¶8 When a village board refuses to act on a petition for direct legislation under WIS. STAT. § 9.20, the proper mechanism for relief is a mandamus action. *State ex rel. Althouse v. City of Madison*, 79 Wis. 2d 97, 102, 255 N.W.2d 449 (1977). "Mandamus is a remedy that can be used 'to compel a public officer to perform a duty of his office presently due to be performed.'" *Voces De La Frontera, Inc. v. Clarke*, 2017 WI 16, ¶11, 373 Wis. 2d 348, 891 N.W.2d 803 (quoting *State ex rel. Marberry v. Macht*, 2003 WI 79, ¶27, 262 Wis. 2d 720, 665 N.W.2d 155). "In order for a writ of mandamus to be issued, four prerequisites must be satisfied: (1) a clear legal right; (2) a positive and plain duty; (3) substantial damages; and (4) no other adequate remedy at law." *Id.* (internal quotation marks and quoted source omitted). A motion to quash a writ of mandamus is treated like a motion under WIS. STAT. § 802.06 to dismiss the complaint. WIS. STAT. § 783.01. "We accept as true all well-pleaded facts in [the] complaint, as well as reasonable inferences from those facts, but we draw our own legal conclusions …." *Colectivo Coffee Roasters, Inc. v. Society Ins.*, 2022 WI 36, ¶7, 401 Wis. 2d 660, 974 N.W.2d 442.

¶9 "An initiative [under WIS. STAT. § 9.20] is a direct voter action to enact new law within a particular jurisdiction." *Heitman v. City of Mauston Common Council*, 226 Wis. 2d 542, 546, 595 N.W.2d 450 (Ct. App. 1999). "[I]n Wisconsin, initiative is a creature of statute and its use must comport with the requirements established by the legislature, both for direct action legislation and

for the specific area of legislation in which initiative is attempted." *Id.* at 547-48. Section 9.20(1) states, in relevant part:

> A number of electors equal to at least 15 percent of the votes cast for governor at the last general election in their city or village may sign and file a petition with the city or village clerk requesting that an attached proposed ordinance or resolution, without alteration, either be adopted by the common council or village board or be referred to a vote of the electors.

Additionally, § 9.20(3) states:

> Within 15 days after the petition is filed, the clerk shall determine by careful examination whether the petition is sufficient and whether the proposed ordinance or resolution is in proper form. The clerk shall state his or her findings in a signed and dated certificate attached to the petition…. When the original or amended petition is found to be sufficient and the original or amended ordinance or resolution is in proper form, the clerk shall so state on the attached certificate and forward it to the common council or village board immediately.

¶10 Although the right to initiative granted by WIS. STAT. § 9.20 "should not be unduly restricted," there are limitations to this right. *Heitman*, 226 Wis. 2d at 548. "An ordinance initiated under WIS. STAT. § 9.20: (1) must be legislative as opposed to administrative or executive in nature; (2) cannot repeal an existing ordinance; (3) may not exceed the legislative powers conferred upon the governing municipal body; and (4) may not modify statutorily prescribed procedures or standards." *Mount Horeb Cmty. Alert v. Village Bd. of Mt. Horeb*, 2003 WI 100, ¶17, 263 Wis. 2d 544, 665 N.W.2d 229.

## II. Mandamus as to the Board

¶11 Relying on *Heitman* and on the third limitation listed above—that an ordinance proposed through direct legislation "may not exceed the legislative

5

powers conferred upon the governing municipal body"—Herried and the Board argue that Ulbricht's petition is not a proper subject for direct legislation. We agree.[3]

¶12 In *Heitman*, an ordinance proposed pursuant to WIS. STAT. § 9.20 would have prohibited the City of Mauston from approving or permitting the location of a secured treatment facility for sexually violent persons under WIS. STAT. ch. 980 on lands within, or owned or annexed by, the City of Mauston. *Heitman*, 226 Wis. 2d at 545. The *Heitman* court concluded that the proposed ordinance was not a proper subject for direct legislation because it was either a zoning ordinance or an amendment to a zoning ordinance. *Id.* at 550-54. The court explained that our legislature created a "state zoning enabling act," WIS. STAT. § 62.23, which "establishes substantive and procedural rights for landowners by requiring a municipality to create its zoning ordinances under certain defined procedures and within certain limitations," *id.* at 550. Under

---

[3] Herried and the Board argue that "at the very least," the third limitation applies here based on the reasoning from *Heitman v. City of Mauston Common Council*, 226 Wis. 2d 542, 546, 595 N.W.2d 450 (Ct. App. 1999). The *Heitman* court did not specify whether it was relying solely on the third limitation or also the fourth, which, as stated, is that a proposed ordinance may not modify statutorily prescribed procedures or standards. Here, it appears as though the fourth limitation—which our supreme court has described "as a corollary to the third limitation"—may also apply. *Mount Horeb Cmty. Alert v. Village Bd. of Mt. Horeb*, 2003 WI 100, ¶28, 263 Wis. 2d 544, 665 N.W.2d 229. We need not decide that issue, however, because the result is the same.

Relatedly, Herried and the Board also rely on the second limitation (that a proposed ordinance cannot repeal an existing ordinance) and argue that the proposed ordinance was not a proper subject for direct legislation on the basis that it would effectively repeal an existing village ordinance. Because we conclude that the proposed ordinance was properly rejected under *Heitman* and the third limitation, we need not address Herried and the Board's alternative argument that is based on the second limitation. *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) (we need not address every issue when one is dispositive).

§ 62.23, "a municipality may change the zoning in regard to certain properties," but "when it does so, it must follow statutorily prescribed procedures, which include notice and hearing." *Id.* at 551. The *Heitman* court concluded that the petitioner could not zone or rezone by initiative rather than through the process prescribed by the legislature in § 62.23. *Id.* at 553.

¶13 The *Heitman* court also concluded that the proposed ordinance was not a proper subject for direct legislation under WIS. STAT. § 9.20 because the petitioner was "attempting to do by initiative what the Common Council, itself, [could not] do; *i.e.*, avoid the substantive and procedural safeguards established in [WIS. STAT.] § 62.23." *Id.* at 554. The court explained that if Mauston were to enact the proposed land use restrictions, § 62.23 would require it to submit the restrictions to the planning commission, landowners would be given notice and a public hearing would be held, and any citizens aggrieved by the restrictions would have a right of appeal, all of which would be circumvented through the use of the initiative process. *Id.* at 554-55.

¶14 Here, the Village's zoning ordinance already regulates the raising of poultry within the Village. Specifically, the zoning ordinance divides the Village into various districts, including the R-1, R-2, and R-3 residential districts, and the R-4 rural development district. The zoning ordinance states that the raising of poultry is a permitted use in the R-4 Rural Development District, but not in the R-1, R-2, or R-3 residential districts.[4] Ulbricht's proposed ordinance, however,

---

[4] Herried and the Village argue that this court must take judicial notice of the Village's zoning ordinance pursuant to WIS. STAT. § 902.03(1)(a), which states: "The courts of this state, including the court of appeals and the supreme court, shall take judicial notice of … [c]ounty and municipal ordinances in those counties in which the particular court has jurisdiction …." In response, Ulbricht appears to argue that we may not take judicial notice of the Village's zoning ordinance because, according to Ulbricht, the "[i]nterpretation and application of zoning terms are

(continued)

7

would allow poultry raising on every residential property in the Village. Specifically, the proposed ordinance states in relevant part, "Each residential property in the Village of Necedah shall be permitted to keep a total of up to eight chickens and/or ducks." Contrary to **Heitman**, the proposed ordinance, if enacted, would rezone through initiative and circumvent the substantive and procedural safeguards in WIS. STAT. § 62.23. As a result, Ulbricht's proposed ordinance is not a proper subject for direct legislation. We reject Ulbricht's arguments to the contrary.

¶15 Ulbricht argues that regulating backyard chickens is not zoning under Wisconsin law and that the proposed ordinance is instead "general animal-control regulation." We need not address whether the proposed ordinance, in isolation, is a zoning ordinance, because we conclude that, given the Village's current zoning regulations regarding poultry raising, the proposed ordinance, if enacted, would amend a zoning ordinance. As such, it fails under **Heitman**. *See id.* at 553 (rejecting the proposed ordinance because it was "either a zoning ordinance *or an amendment to a zoning ordinance*" (emphasis added; footnote omitted)). Ulbricht also argues that WIS. STAT. § 9.20 must be construed broadly to preserve elector power, but this argument is unavailing given our conclusion that **Heitman** controls and that a well-recognized limitation to § 9.20's right to initiative applies. Accordingly, we conclude that Ulbricht's arguments fail under

factual and legal questions that cannot be resolved on a motion to dismiss." However, the interpretation of a zoning ordinance is a question of law that we review de novo, *Milwaukee District Council 48 v. Milwaukee County*, 2019 WI 24, ¶11, 385 Wis. 2d 748, 924 N.W.2d 153, and our interpretation of a zoning ordinance does not affect whether we may take judicial notice of it. Relatedly, Ulbricht does not dispute the Village's interpretation of its zoning ordinance, and we accordingly adopt that interpretation for purposes of this opinion. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 108-09, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments are deemed conceded).

*Heitman* because the proposed ordinance, if enacted, would rezone through initiative and circumvent the substantive and procedural safeguards in WIS. STAT. § 62.23.

¶16 Finally, Ulbricht argues that his proposed ordinance could not be challenged as an improper subject for direct legislation under WIS. STAT. § 9.20 until after the ordinance was enacted. However, Ulbricht's argument is belied by the very case that he relies on in making this argument, *Althouse*. There, as Ulbricht argues, our supreme court stated that "the electorate under the direct legislation statutes[] may compel placement on the ballot regardless of grave doubts in respect to constitutionality and statutory validity." *Althouse*, 79 Wis. 2d at 117-18. But the court also explicitly excepted from this rule determinations, like the one here, as to whether limitations apply to § 9.20's right to directly legislate:

> [T]he common council has no authority whatsoever, in respect to direct legislation, to make an initial judgment of the constitutionality or validity of the proposed legislation. That limitation of authority is, of course, conditioned on the council's right to exercise discretion where the unconstitutionality is clear from prior adjudications on the same subject matter; or where the measure is of a nature to put it beyond the pale of the authority of the council itself; or where the direct legislation seeks to impliedly or expressly repeal existing ordinances or resolutions.

*Id.* at 110 (citations omitted). Additionally, *Heitman*, which was decided after *Althouse*, upheld the rejection of the proposed ordinance in that case before the ordinance's enactment. *Heitman*, 226 Wis. 2d at 545, 555. We therefore reject Ulbricht's argument that the proposed ordinance could only be challenged as an improper subject for direct legislation after it was enacted.

¶17    In sum, Ulbricht fails to show that he is entitled to a writ of mandamus because he fails to show that the Board had a positive and plain duty to either adopt the proposed ordinance or submit it to the electorate for a vote. *See Voces De La Frontera*, 373 Wis. 2d 348, ¶11.[5]

### III.  Mandamus as to Herried

¶18    Ulbricht argues that, even if the Board was not required to act on Ulbricht's petition, Herried was nevertheless required to certify the petition and forward it to the Board because these duties are ministerial and nondiscretionary. In support of this conclusion, Ulbricht relies on WIS. STAT. § 9.20(3), quoted above, and on *State ex rel. North v. Goetz*, 116 Wis. 2d 239, 342 N.W.2d 747 (Ct. App. 1983).  *Goetz* states:

> The duty of the city clerk under [§ 9.20(3)] is unequivocally of a mandatory, ministerial, nondiscretionary nature.  The statute requires the city clerk to forward a petition and proposed ordinance to the common council if there are sufficient valid signatures and the proposed ordinance is in proper form.  It is not within [the clerk's] authority to make a substantive determination regarding the appropriateness of the proposed ordinance for direct legislation.

*Id.* at 244.  Consistent with *Goetz*, Ulbricht argues that Herried was required to certify Ulbricht's petition and forward it to the Board.  We reject this argument because we conclude that Ulbricht forfeited it by failing to adequately pursue it before the circuit court.

---

[5] Ulbricht additionally argues that the circuit court erred in various other respects when it concluded that he was not entitled to a writ of mandamus as to the Board, but we need not address these arguments because our review is de novo.

¶19 Specifically, as explained below, during the circuit court proceedings, Ulbricht made it clear that he was asking the court to rule on whether the Board was required to act on the petition and further conveyed that he was not asking the court to separately address whether Herried was required to certify it and forward it to the Board even if the Board was not required to act. In the circuit court, Ulbricht stated the following regarding this issue: "[T]he reason why I included the [B]oard in this suit is I didn't want to have to end up -- you know, say, if [the court] ruled in my favor that, yes, [Herried] should have certified the sufficiency of the petition, and then it goes to the [Board], and then they refuse to act, we would be in here again." Ulbricht told the court that he was trying to avoid that situation. In response, the court asked Ulbricht and counsel for Herried and the Board, "So you both want me to rule today on basically the issue of whether or not this should go to a vote?" Ulbricht and counsel for Herried and the Board both answered yes. The court therefore ruled on that issue and did not address whether Herried was required to certify the petition and forward it to the Board. After the court made its ruling—which, again, was limited to whether the Board was required to act on Ulbricht's petition—the court asked the parties if they had any questions. Ulbricht responded that he did not, and Ulbricht did not subsequently ask the court to rule on the issue of whether Herried was required to certify the petition and forward it to the Board, and, as stated, the court did not address that issue.

¶20 We conclude that by telling the circuit court that he wanted the court to rule on whether the Board was required to act on his petition, and by failing to raise, after the court made its ruling, the issue of whether Herried was required to certify the petition and forward it to the Board, Ulbricht forfeited this issue through abandonment. "[A] party must raise and argue an issue with enough

11

prominence to signal to the [circuit] court that it is being called upon to address an issue and make a ruling." **State v. Johnson**, 184 Wis. 2d 324, 345, 516 N.W.2d 463 (Ct. App. 1994). Failure to do so may be construed as "tacitly abandon[ing]" the issue. **Id.** Here, that is precisely what occurred. Because Ulbricht forfeited any argument that his petition for mandamus should have been granted as to Herried even if denied as to the Board, we do not consider this issue.[6] *See State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727 ("It is a fundamental principle of appellate review that issues must be preserved at the circuit court. Issues that are not preserved at the circuit court … generally will not be considered on appeal.").

## CONCLUSION

¶21    For the reasons stated, we affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[6] Herried and the Board argue that we need not address whether Herried was required to certify the petition and forward it to the Board because that issue is moot given that, at Ulbricht's request, the circuit court ruled on whether the Board was required to act on Ulbricht's petition. We need not address whether this issue is moot in light of our conclusion that Ulbricht forfeited the argument. *See Barrows*, 352 Wis. 2d 436, ¶9.

12